[Civ. No. 22612. Fourth Dist., Div. One. June 18, 1980.]

LEON PESSES et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
PACIFIC SOUTHWEST AIRLINES, Real Party in Interest.

[Civ. No. 22613. Fourth Dist., Div. One. June 18, 1980.]

LINDA PESSES et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
PACIFIC SOUTHWEST AIRLINES, Real Party in Interest.

[Civ. No. 22629. Fourth Dist., Div. One. June 18, 1980.]

CATHERINE ANNE FLASHMAN, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
PACIFIC SOUTHWEST AIRLINES, Real Party in Interest.

COUNSEL

Luce, Forward, Hamilton & Scripps, Marshall L. Foreman, Jr., Ned Good, Gary S. Greene, Bruce J. Altshuler and Ronald L. M. Goldman for Petitioners.

Donald L. Clark, County Counsel, and Lloyd M. Harmon, Jr., Chief Deputy County Counsel, for Respondent.

Kern & Wooley, Kern, Wooley & Maloney, Robert M. Kern, Ralph S. LaMontagne, Jr., and Michael J. Terhar for Real Party in Interest.

OPINION

**BROWN (Gerald), P. J.**—For convenience we have consolidated three petitions for writs of mandate, brought by 15 individual plaintiffs who filed wrongful death actions in Los Angeles against real party Pacific Southwest Airlines (PSA), after the crash of a PSA aircraft in San Diego in September 1978. All personal injury actions arising out of that accident have been coordinated for trial in the San Diego Superior Court. After coordination PSA stipulated to liability with most of the plaintiffs, including petitioners here. Petitioners now seek transfer back to Los Angeles for the pending trials of the damages issues. The trial court denied the motions to retransfer. The petitions in this court are authorized by Code of Civil Procedure section 404.6, establishing review by writ of mandate of superior court orders in coordination proceedings. Below, petitioners relied on California Rules of Court, rules 1542 and 1543 authorizing remand or transfer of a coordinated action or severable issue within it to the originating court where it was filed, either on stipulation or, if opposed as here, on a showing of material change in circumstances relevant to coordination.

Petitioners argue remand is proper because the damages issues share no common questions. The issue of PSA's liability was the common question which justified coordination, and it has now been eliminated by stipulation. Petitioners further offered a showing of great inconvenience and hardship if trials were to be had in San Diego County because the overwhelming majority of plaintiffs' witnesses live and work in Los Angeles County. Also, their actions were all originally filed in Los Angeles County, and PSA's motion to change the venue to San

Diego County was denied. That denial, affirmed in the Second District Court of Appeal (by denial of writ review), establishes suitability of venue in Los Angeles. They further point out the original order granting coordination in San Diego was made "without prejudice to the parties in any action originally filed outside San Diego County to request a retransfer of such action to the originating county for trial on the issue of damages." This language arguably shifts the burden to PSA to justify retaining the actions in San Diego now that liability is not in issue.

PSA responds with these arguments: (1) the affidavits identifying the Los Angeles witnesses are insufficient because they neither specify the proposed testimony nor give adequate facts showing hardship in having to testify in San Diego, such as would be required if this were a motion to change venue on the ground of promoting the convenience of witnesses and the ends of justice under Code of Civil Procedure section 397, subdivision 3; (2) if the actions are retained here they will all be tried by the fall of 1980, but if they are retransferred to Los Angeles the crowded condition of the superior court docket will delay trials for three to four years; (3) there is no showing the Los Angeles witnesses will still be in Los Angeles in three to four years; (4) petitioners have the burden of proof of transfer, as they would if this were a venue motion under Code of Civil Procedure section 397, subdivision 3, and they have not carried this burden; (5) the trial court, again by analogy to venue practice, has very broad discretion, which is not here shown to be abused; (6) common questions of law relating to instructions and evidentiary rulings exist, and remand will make possible multiple inconsistent rulings in these cases; (7) remand will foster judicial inefficiency because the coordination judge is more familiar with these matters than are trial judges elsewhere, and his expertise will speed the trials of these matters and avoid wasting the time of other judges in Los Angeles.

For reasons we shall state, we have concluded it is inappropriate to remand these cases for trial in Los Angeles County. There is evidence to support the trial court's exercise of discretion in retaining the case as a coordinated action, within the relevant statutory standards.

FACTS

For convenience, we describe petitioners in three groups: Leon and Lea Pesses, parents of decedent Jeffrey Pesses, a Los Angeles attorney, referred to as the Leon Pesses plaintiffs; twelve persons represented by

attorney Ned Good and referred to as the Ned Good plaintiffs; and Catherine Ann Flashman, widow of decedent Perry Erlich Flashman, a Los Angeles businessman.

The Leon Pesses plaintiffs offered the following evidence in support of the motion to remand: first, their attorney filed a declaration under penalty of perjury stating all the evidence relating to damages is in Los Angeles and all the witnesses for the plaintiffs reside or work there. The attorney has his office in Los Angeles, while PSA has counsel in both Los Angeles and San Diego. Further, Leon Pesses was 70 years of age on April 2, 1980, entitling him to statutory preference for trial setting (Code Civ. Proc., § 36, subd. (a)). Further, all discovery has been and will be conducted in Los Angeles. Decedent's wife, family, clients and friends all live in the Los Angeles area. Decedent had no clients or cases in San Diego. All witnesses to be called are within 20 to 30 minutes of the central branch of the Los Angeles Superior Court. Plaintiffs Leon and Lea Pesses own a bicycle shop on Robertson Boulevard in Los Angeles and will suffer hardship in leaving it unattended while they testify in San Diego. Some of the witnesses are judges, such as Judge Manuel Real of the United States District Court, Central District, whose calendars will be disrupted if they have to travel to San Diego to testify. In addition to the attorney's declaration, plaintiffs offered declarations of Leon and Lea Pesses and of two proposed witnesses specifying residence in Los Angeles and hardship in having to travel to San Diego, consisting of difficulties in having to be away from their work.

In the Ned Good cases, the attorney likewise filed his declaration alleging the great bulk of witnesses in these cases live in or work in Los Angeles County and are 20 to 30 minutes from the Los Angeles courthouse and some 2 1/2 hours from San Diego. He alleged general additional expenses in transporting these witnesses, as well as lodging and feeding them here should their testimony take more than one day in any case. He supported this declaration with a list of expected witnesses, stating their addresses in some cases, but not specifically describing their testimony. More than 300 persons on this list allegedly live or work in Los Angeles County and only about 24 are from other counties, including 11 from San Diego and 1 from La Jolla. The attorney declared, in general, these witnesses will testify to the usual damage elements recoverable in a wrongful death action under Code of Civil Procedure section 377, including health, education, training, experience, earning capacity, love, care, comfort, consortium, of decedents and/or their heirs. The decedents include three Los Angeles attorneys; three

engineers, one from Boston and two from Los Angeles; four unmarried sons of Los Angeles parents; one attorney son of a Los Angeles father, leaving heirs in Los Angeles; and a mother and daughter from Los Angeles, leaving one heir in Orange County and another in Northern California. The witness list furnished indicates two United States District Court Judges from the central district in Los Angeles, two judges from California state courts in Los Angeles, and over three hundred other potential Los Angeles witnesses identified as relatives, friends, or business associates of the decedents.

In the Flashman case, the attorney made a general declaration similar to that of Ned Good indicating the witnesses will all testify concerning marital relationship of plaintiff and decedent and decedent's financial expectations, and all witnesses reside in Los Angeles County. In addition, he specified nine persons from Los Angeles who will testify, identifying their relationship to decedent and summarizing their expected testimony in capsule form. For example, it is stated two witnesses are growers and shippers who conduct extensive business with decedent's family business and they will testify to decedent's business future.

PSA did not specifically contradict the facts of any of these declarations but simply contended they are insufficient.

The trial court filed in this court a defense of its position, which stated the following common questions of law exist in the damages trials: the right to prejudgment interest; recovery for loss of inheritance rights; evidentiary rulings and jury instructions regarding present cash value; and the right to present evidence of the impact of federal income taxes on the award since *Norfolk & Western R. Co. v. Liepelt* (1980) 444 U.S. 490 [62 L.Ed.2d 689, 100 S.Ct. 755]. In addition, the court declared all these cases can be tried in San Diego by October 1, 1980; but according to the assistant presiding judge of the superior court in Los Angeles, the trial waiting period there is three to four years. Further, even though plaintiff Leon Pesses may be entitled to preference because of his age, he could not be tried in Los Angeles as soon as in San Diego, where his trial was set for June 2, 1980, before intervention of this proceeding. Further, the court pointed out a substantial amount of judicial time and expense has been invested in creating the schedule for the coordinated actions and in pretrial motions and discovery work, particularly on those cases which are now ready for trial, all of which work will be

wasted if the cases are now sent to Los Angeles where trial proceedings will have to be recommenced.

## LAW

The directly applicable statutes and court rules are the recently enacted provisions for coordination of actions, under whose authority these matters were originally coordinated in San Diego. Sections 404 and 404.1 of the Code of Civil Procedure authorize coordination for trial of civil cases pending in different courts which share common questions of fact or law when such coordination will promote the ends of justice, taking into account the following factors specified in section 404.1: "[W]hether the common question of fact or law is predominating and significant to the litigation; the convenience of parties, witnesses, and counsel; the relative development of the actions and the work product of counsel; the efficient utilization of judicial facilities and manpower; the calendar of the courts; the disadvantages of duplicative and inconsistent rulings, orders, or judgments; and, the likelihood of settlement of the actions without further litigation should coordination be denied." The California Rules of Court, rules 1501 through 1550, which implement the statutes, permit remand of a coordinated action or a severable claim or issue in that action to the court where the action was pending when coordination was ordered. (Rules 1501 (o) and 1542.) Rule 1542 permits remand either when unopposed, or upon evidence demonstrating "a material change in the circumstances that are relevant to the criteria for coordination as stated in Code of Civil Procedure section 404.1." Further, rule 1543 permits the coordination judge to transfer any coordinated action or severable claim in such action to another court for a specified purpose or all purposes. Again, if transfer is opposed, the court must consider factors similar to those specified in section 404.1 to justify coordination. For transfer, the criteria to be considered are: "[T]he convenience of parties, witnesses, and counsel; the relative development of the actions and the work product of counsel; the efficient utilization of judicial facilities and manpower; the calendar of the courts; and any other relevant matter." These factors are nearly identical to the factors specified in Code of Civil Procedure section 404.1.[1] If the coordination judge orders transfer, then he may also direct what proceedings shall be held in the court to which trans-

---

[1]Rule 1543 omits the factors of the disadvantages of duplicative and inconsistent rulings, orders, or judgments, and the likelihood of settlement, factors included in section 404.1 as relevant to coordination.

ferred, according to rule 1543 (b) which provides "the court to which the action is transferred may exercise jurisdiction over the action in accordance with the orders and directions of the coordination trial judge,..." These provisions apply also to remands under rule 1542. (Rule 1542 incorporates by reference rule 1543(b), when the order of remand requires transfer.)

Because there is no reported useful precedent as yet under the coordination statutes and rules, the parties, particularly PSA, seek to rely on analogies developed under the venue statute providing for transfer of cases to promote the convenience of witnesses and the ends of justice (Code Civ. Proc., § 397, subd. 3). The stated considerations for change of venue under section 397, however, are much narrower than those enumerated in the coordination provisions. Convenience of witnesses and promotion of the ends of justice have been held, for example, not to encompass the convenience of the parties (*Peiser* v. *Mettler* (1958) 50 Cal.2d 594, 612 [328 P.2d 953, 74 A.L.R.2d 1]), yet that consideration is expressly relevant to coordination under section 404.1, and to remand and transfer under rules 1542 and 1543. (Rule 1542 incorporates by reference the stated criteria of § 404.1 and rule 1543 enumerates convenience of parties as a consideration.)

Further, PSA seeks to compare its position to that of a plaintiff resisting a change of venue motion under Code of Civil Procedure section 397, subdivision 3. In that instance, the burden rests on the party moving for transfer to establish grounds for change of venue, on the theory the plaintiff lays the venue and it is presumptively correct. (See 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 522, p. 1342; *Hearne* v. *DeYoung* (1896) 111 Cal. 373, 376 [43 P. 1108].) Here, however, PSA did not bring the actions nor choose the original venue; rather, petitioners brought the actions in Los Angeles, and as they point out, PSA's original motion to change the venue was unsuccessful. Further, the provision in the coordination order stating coordination was without prejudice to a retransfer for trial on damages issues, may indicate the judge who made the coordination order viewed the liability issue as the only significant basis for coordination. In one sense petitioners are arguably prejudiced if the burden now rests on them to establish grounds for retransfer, when originally PSA had the burden of establishing grounds for venue in San Diego.

PSA has cited a number of cases dealing with motions for change of venue under Code of Civil Procedure section 397, subdivision 3, to dem-

onstrate affidavits showing inconvenience of witnesses must be specific. (See, e.g., *Union Trust Life Ins. Co. v. Superior Court* (1968) 259 Cal. App.2d 23 [66 Cal.Rptr. 270].) Essentially these cases carve a broad area of trial court discretion in these matters, and also establish the party wishing to change the venue must offer more than conclusionary assertions of hardship in order to carry his burden of proof. Even assuming a similar burden rests on petitioners here to secure a transfer or remand of their actions, we think the affidavits are sufficient because of the sheer weight of numbers of witnesses from Los Angeles who will be required to travel two to two and one-half hours to San Diego for these trials. (Cf. *Harden v. Skinner & Hammond* (1955) 130 Cal.App.2d 750 [279 P.2d 978]; *Garrett v. Superior Court* (1967) 248 Cal.App.2d 263 [56 Cal.Rptr. 418]; *Pearson v. Superior Court* (1962) 199 Cal.App.2d 69 [18 Cal.Rptr. 578].)

However, the venue cases, limited as they are to the narrow perspective of witness convenience, do not determine the question of coordination, which, as stated, rests on broader considerations including convenience of parties and judicial economy. If this were simply a question of convenience of witnesses the record might well demonstrate abuse of discretion, but here the trial court had to consider other factors. Particularly relevant in this context are the factors, specified in Code of Civil Procedure section 404.1 and incorporated into rules 1542 and 1543, California Rules of Court, of the presence of common questions of law; the efficient utilization of judicial facilities and manpower; the calendar of the courts; and the disadvantages of duplicative and inconsistent rulings. There is some evidence in the record all of these factors will be served by retaining the case in San Diego. Plaintiffs do not deny the existence of common questions of law, particularly that of prejudgment interest, and the possible unfairness of inconsistent rulings on that issue among the various heirs of victims of the same aircrash. Likewise, it is clear the considerable time invested in coordinating the cases in San Diego and conducting pretrial preparation here will also be wasted if the cases must proceed anew in Los Angeles. Likewise, the additional burden on the court calendar in Los Angeles, coupled with the necessary rescheduling here, may be a burden on the calendar of either or both courts, and an imposition on the statewide judiciary as a whole in negating much of the benefit so far realized from coordination.

Plaintiffs have argued for a rule of automatic retransfer of any coordinated case when the common questions of law or fact cease to exist. The statute and the rules do not, however, state such a rule. Rather,

they articulate specific criteria which are relevant both to coordination and to remand or transfer after coordination. This parallel listing of multiple factors necessitates the exercise of trial court discretion in weighing and balancing these factors to determine whether coordination, or severance, best serves the ends of justice in a particular case. We can think of no reason why the discretion of the coordination judge in such matters should be any less than that afforded trial courts normally in the trial of factual issues. The same discretion is exercised in the venue situation, except that fewer factors are legally relevant. Accordingly, we conclude the issue of remand here is within the discretion of the trial court, which was not here abused, since there is evidence to support the existence of many factors favoring retention. Weighing the convenience of witnesses and parties against the other factors here stated, the trial court opted for retention. We cannot say the decisions were so patently arbitrary and unreasonable as to constitute abuse of discretion.

The writ of mandate is denied and the trial court orders are affirmed.

Cologne, J., and Staniforth, J., concurred.

Petitioners' applications for a hearing by the Supreme Court were denied August 15, 1980. Bird, C. J., and Mosk, J., were of the opinion that the applications should be granted.