[Civ. No. 58463. Second Dist., Div. Four. Oct. 23, 1980.]

P. DENNIS KEENAN et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
PIPER AIRCRAFT CORPORATION et al., Real Parties in Interest.

[Civ. No. 58662. Second Dist., Div. Four. Oct. 23, 1980.]

PIPER AIRCRAFT CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
P. DENNIS KEENAN et al., Real Parties in Interest.

COUNSEL

Billips & Desimone and Salvatore Desimone for Petitioners in No. 58463 and Real Parties in Interest in No. 58662.

Memering & DeMers and James A. Honer for Petitioner in No. 58662 and Real Party in Interest in No. 58463.

Magana, Cathcart, McCarthy & Pierry, John M. Dillard, Owen, Melbye & Rohlff and William H. Owen for other Real Parties in Interest.

No appearance for Respondent.

OPINION

**FILES, P. J.**—This court has been presented with two petitions for extraordinary relief in five related actions arising out of injuries and deaths in an airplane crash. The legal issues here relate to a conflict between the order of one Los Angeles Superior Court judge for coordination of the five cases under Code of Civil Procedure section 404 et seq. and the order of another judge changing venue for three of the cases.

In this opinion all references to sections are to the Code of Civil Procedure. All rule citations refer to the California Rules of Court.

The five underlying actions arose out of the 1977 crash of a Piper aircraft while taking off from South Lake Tahoe Airport in El Dorado County on its return flight to El Monte Airport in Los Angeles County. The pilot and one passenger were killed; the surviving three passengers were injured. The pilot and three passengers were residents of Los Angeles County, where the aircraft had been maintained and leased for the flight, and one passenger resided in San Diego County.

These actions will be identified by the names of the respective plaintiffs. Actions by Tobin and Peterson were filed in Los Angeles County. An action by Long was filed in El Dorado County. The Keenans simultaneously filed actions in Los Angeles and El Dorado Counties. The defendants in these actions included the manufacturer of the plane, Piper Aircraft Corporation, the lessor of the plane, El Monte Flight Service, the administrator of the estate of the pilot, Tobin, and the owner of the plane, Hueckel.

On or about November 7, 1979, pursuant to section 404 and rule 1520, the Keenans filed in the Los Angeles Superior Court a motion to commence proceedings for the coordination of the five actions. On November 23, 1979, that court gave its approval and transmitted the request to the Chief Justice[1] who, on January 21, 1980, made the following order: "THE HONORABLE DAVID N. EAGLESON, judge of the Superior Court of Los Angeles County, is hereby assigned pursuant to

---

[1]Both the statute (§ 404) and the Rules of Court (rule 1520 et seq.) use the title "Chairman of the Judicial Council." This was a title given to the Chief Justice of California by article VI, section 6, of the California Constitution as it read when the statute and rules were adopted. An amendment to the Constitution adopted November 5, 1974, eliminated that title and now refers to the head of the judicial branch solely as the Chief Justice.

Code Civil Procedure section 404 and rule 1524, California Rules of Court to sit as coordination motion judge to determine whether coordination of the included actions enumerated below is appropriate. Pursuant to section 404.5 and rule 1514, pending any determination whether coordination is appropriate, the coordination motion judge may stay any action being considered for, or affecting an action being considered for, coordination."

Meanwhile, Piper had filed motions in Los Angeles to change the venue of the three Los Angeles cases to El Dorado County. These motions came on for hearing in a law department, where on January 25, 1980, Judge Ralph granted the motions and ordered the three cases transferred to El Dorado.

On February 1, 1980, the Keenans filed in this court a petition for a writ of mandate or prohibition (case No. 2 Civ. 58463) to review Judge Ralph's January 25, 1980, order.

On February 13, 1980, Judge Eagleson conducted a hearing pursuant to section 404.3 after which he made the following order: ". . . [G]ood cause appearing that the coordination of the included actions is appropriate under the standards specified in Code of Civil Procedure, Section 404.1, it is ordered that the petition for coordination of the included actions is granted. The Court of Appeal, Second Appellate District, is designated the reviewing court having appellate jurisdiction and the court in which any petition for a writ relating to any subsequent order in this proceeding shall be filed.

"Judge Jack T. Ryburn is nominated the coordination trial judge."

On February 25, 1980, Piper filed its petition in this court for a writ prohibiting any action in the coordination proceeding. (Case No. 2 Civ. 58662.)

Before discussing the issues, it is useful to summarize the statute and rules relating to coordination.

■ Coordination may be requested when civil actions sharing a common question of fact or law are pending in different courts. The procedure for bringing this about is in three steps. The first is a request to the Chief Justice by the presiding judge of a trial court. The Chief Justice then assigns a judge to determine whether coordination is appro-

priate (§ 404). The second step is a hearing before the assigned judge. If that judge determines that, under the standards set forth in section 404.1,[2] coordination is appropriate, an order to that effect is made and reported to the Chief Justice. The third step is the action of the Chief Justice in assigning a judge "to hear and determine the actions in the site or sites the assigned judge finds appropriate." (§ 404.3.)

The Judicial Council has been given broad authority over practice and procedure for coordinated actions. Section 404.7 empowers the council to provide by rule for practice and procedure for coordination "notwithstanding any other provision of law." The practical effect of such a grant of power is to remove any restraints of statutory consistency on the Judicial Council's rules. (See *In re Marriage of McKim* (1972) 6 Cal.3d 673, 678, fn. 4 [100 Cal.Rptr. 140, 493 P.2d 868], so holding with regard to a similar statutory grant in the Family Law Act (Civ. Code, § 4001), discussed in 2 Cal. Civil Procedure Before Trial (Cont.Ed.Bar) § 28.2.)

Rules 1520-1545, adopted by the Judicial Council, give the coordination judge broad discretion to adopt procedures which will serve the convenience of parties, witnesses and counsel, and utilize judicial personnel and facilities efficiently.

The statute and rules clearly establish that the coordination judge is not to be constrained by the preexisting law relating to the place of trials. The venue statutes (§§ 392-401) require that the place of trial be determined by such matters as the nature of the action, the county in which certain events occurred, the legal form or capacity of a party and the residence of a party. Once the proper place of trial is determined under these statutory standards, all trial court proceedings are conducted in that place.

The coordination law, on the other hand, enjoins the trial judge to "assume an active role in managing all steps of the pretrial, discovery,

---

[2]Section 404.1: "Coordination of civil actions sharing a common question of fact or law is appropriate if one judge hearing all of the actions for all purposes in a selected site or sites will promote the ends of justice taking into account whether the common question of fact or law is predominating and significant to the litigation; the convenience of parties, witnesses, and counsel; the relative development of the actions and the work product of counsel; the efficient utilization of judicial facilities and manpower; the calendar of the courts; the disadvantages of duplicative and inconsistent rulings, orders, or judgments; and, the likelihood of settlement of the actions without further litigation should coordination be denied."

and trial proceedings..." (rule 1541(b)) and gives the court new flexibility in selecting the place or places where judicial activities may be conducted. Under rule 1541(b) the court may "(1) order any coordinated action transferred to another court pursuant to Rule 1543; (2) schedule and conduct hearings, conferences, and a trial or trials at any site within this state he deems appropriate with due consideration to the convenience of parties, witnesses, and counsel; the relative development of the actions and the work product of counsel; the efficient utilization of judicial facilities and manpower; and the calendar of the court;..."

■ We turn now to an examination of the legal effect of the procedures undertaken in the five air crash cases which are the subject of the proceedings here.

In November 1979, when the Los Angeles Superior Court took the first step to request the assignment of a coordination motion judge, and on January 21, 1980, when the Chief Justice assigned Judge Eagleson as the motion judge, there were three actions pending in Los Angeles County and two pending in El Dorado County, all of which shared common questions of fact and law. Thus, the request met the threshold standard set forth in section 404. The action of Judge Ralph on January 25, 1980, in granting Piper's motion to transfer the three Los Angeles actions to El Dorado was inconsistent with the pending proceedings for coordination. That order cannot be given effect if the cases are to be litigated through the flexible procedures of the coordination statute and rules. Once a case has come under the coordination procedure, the place of trial must be determined by the coordination judge unfettered by the narrow perspective of the venue statutes (see *Pesses* v. *Superior Court* (1980) 107 Cal.App.3d 117, 125 [165 Cal.Rptr. 680]).

The coordination procedure, where applicable, was clearly intended to govern subsequent activities without interference by any judge other than those designated by the Chief Justice as coordination motion judge and coordination trial judge.

Section 404.5 authorizes the coordination motion judge to "stay any action being considered for, or affecting an action being considered for, coordination." Rule 1529 provides "[a]n order granting a petition for coordination of any action shall, upon filing in that action, automatically stay all further proceedings in that action, except as directed by the coordination trial judge,..."

When Judge Ralph acted on January 25, 1980, Judge Eagleson, the coordination motion judge, had not ordered any stay, and the petition for coordination had not yet been granted. Therefore, no statutory or court ordered stay was in effect. Notwithstanding that, the statutory system reflects the legislative intent to give priority to the pending coordination proceedings, and the action taken on January 25, 1980, was an improper intrusion upon cases which the Chief Justice had assigned to the coordination motion judge. Ordinarily, when a case is assigned to a judge of a multi-judge court, that judge must be allowed to carry out the assignment without interference by some other judge. (See 1 Witkin, Cal. Procedure (2d ed. 1970) Courts, § 162, p. 430.) ■ ■ ■■ The January 25, 1980, order was, at best, an abuse of discretion and should be set aside.[3]

We find no merit in Piper's contention that the Keenans lacked standing to seek review of the January 25, 1980, order. As parties to the coordination proceeding, the Keenans properly asked this court to review an order which could not be given effect without interfering with the powers to be exercised by the coordination judge.

Some of the parties in interest have asserted that Judge Eagleson's order established venue in Los Angeles. The reporter's transcript of the February 13 hearing shows that the judge made such a statement, but that statement does not appear in the court's order granting coordination. The order does "nominate" Judge Ryburn of the Los Angeles Superior Court as the coordination judge. That nomination will have only such effect as the Chief Justice sees fit to give it. Section 404.3 provides that the Chief Justice will assign the coordination judge, and the latter is empowered by rule 1541(b) to determine the place or places where proceedings are to take place. As we have pointed out above, the coordination trial judge will have a broad discretion to conduct proceedings in various places as may be appropriate, considering the convenience of the parties, witnesses and counsel, and the efficient use of judicial time. The exercise of that power should afford at least as much convenience as the ruling erroneously made on January 25, 1980, under the narrower statutory venue standards.

---

[3]It also appears from the record here that the January 25, 1980, order was premature. Piper's motion for change of venue to El Dorado County was made upon the ground of convenience of witnesses, although Piper had not answered the Keenans' Los Angeles complaint. As a general proposition a motion based on the convenience of witnesses is not available until the answer is filed. (*Easton v. Superior Court* (1970) 12 Cal.App.3d 243 [90 Cal.Rptr. 642].)

In case 2 Civil 58463 let a writ of mandate issue requiring the respondent court to vacate its order of January 25, 1980, changing the place of trial to El Dorado County in the actions entitled Keenan v. Piper, No. C 247282; Peterson v. Piper, No. C 248311; and Tobin v. Piper, No. C 239920.

In case 2 Civil 58662 the petition is denied.

Kingsley, J., and Woods, J., concurred.

A petition for a rehearing was denied November 13, 1980, and the petition of real party in interest Piper Aircraft Corporation for a hearing by the Supreme Court in No. 58463 was denied December 17, 1980. Bird, C. J., did not participate therein.