Filed 5/13/24 Gonzalez v. Aluminum Precision Products CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| MAIKEL GONZALEZ,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALUMINUM PRECISION PRODUCTS, INC.,<br><br>    Defendant and Respondent;<br><br>JOHN MALDONADO, JR., et al.<br>    Appellants and Movants. | 2d Civil No. B327278<br>(Super. Ct. No. 56-2022-00571822-CU-OE-VTA)<br>(Ventura County) |

Appellants and movants John Maldonado, Jr., Gregory Maratas, Bernardo Sandoval, and Law Offices of Sima Farde, APC (collectively Appellants), appeal from a judgment approving a settlement between respondents Maikel Gonzalez and Aluminum Precision Products, Inc. (APP) in a Labor Code Private Attorneys General Act of 2004 (PAGA) action (Lab.

Code,[1] § 2698 et seq.). Appellants contend the trial court (1) violated coordination rules and statutes, (2) erred in overruling objections to a declaration, (3) lacked jurisdiction to rule on the settlement approval, (4) did not evaluate the settlement's fairness or reasonableness, and (5) erred in denying Appellants' motion to intervene. We affirm.

FACTS AND PROCEDURAL HISTORY

*Maldonado's initial PAGA action in Orange County*

In July 2020, Maldonado submitted a PAGA notice to the Labor and Workforce Development Agency (LWDA) alleging violations of (1) the WARN Act,[2] (2) failure to reimburse mileage, and (3) excessive heat and work conditions. He subsequently filed a PAGA lawsuit in Orange County Superior Court (Case No. 30-2020-01164707-CU-OE-CXC) based on the same three predicate violations.

*Gonzalez I*

In November 2020, Gonzalez submitted a PAGA notice to the LWDA, alleging APP failed to (1) pay minimum, straight time, and overtime wages, (2) provide meal periods, (3) authorize rest periods, (4) maintain accurate records of hours worked and meal periods taken, (5) reimburse and indemnify business expenses, (6) timely pay wages upon termination, and (7) provide accurate itemized wage statements. Gonzalez also filed a lawsuit in Ventura County Superior Court (Case No. 56-2020-00546795-CU-OE-VTA) (*Gonzalez I*), asserting individual and class causes

---

[1] Further unspecified statutory references are to the Labor Code.

[2] The California Worker Adjustment and Retraining Act (WARN Act). (Lab. Code, § 1400 et seq.)

of action based on these alleged wage and hour violations. In March 2021, Gonzalez amended his complaint to dismiss the individual and class causes of action and to add a PAGA cause of action based on the predicate violations.

In April and May 2021, Gonzalez submitted amended PAGA notices to the LWDA and APP to allege additional predicate violations, including those raised in Maldonado's lawsuit.

Gonzalez and APP agreed to mediate and settled the PAGA lawsuit based on the predicate violations alleged in the April and May 2021 amended PAGA notices. Gonzalez moved for settlement approval.

The LWDA informed Gonzalez and APP that it intended to investigate the alleged violations in the April and May 2021 amended PAGA notices and that the trial court could not approve settlement of any alleged predicate violations being investigated. Gonzalez and APP thus limited settlement of the PAGA lawsuit to only those violations noticed in Gonzalez's November 2020 PAGA notice.

In May 2021, Maldonado filed a motion in Ventura County Superior Court to stay *Gonzalez I*, pending resolution of a petition for coordination in Orange County Superior Court. The trial court denied the stay motion. The petition for coordination was later denied in August 2021. Maldonado also filed multiple motions to intervene in *Gonzalez I* which the trial court denied.

In July 2021, the Ventura County Superior Court granted Gonzalez's motion to approve the *Gonzalez I* settlement. Maldonado appealed the order denying intervention and we affirmed. (*Gonzalez v. Aluminum Precision Products, Inc.* (June 20, 2022, B313833) [nonpub. opn.].)

3

*Maldonado's second amended complaint*

In March through June 2021, Maldonado submitted multiple amended PAGA notices, alleging new predicate violations, including those raised by Gonzalez. Maldonado also named additional aggrieved employees, including Maratas and Sandoval. In November 2021, Maldonado filed a second amended PAGA complaint alleging more than a dozen predicate violations.[3]

*Gonzalez II and Appellants' petition for coordination and intervention motion*

The LWDA stated its intent to investigate the alleged violations raised in Gonzalez's April and May 2021 PAGA notices, but did not issue any citations against APP. Additionally, the Division of Occupational Safety and Health (Cal/OHSA) inspected APP's work environment for alleged violations of excessive heat and failure to provide shade and clean drinking water and found none.

---

[3] Maldonado alleged (1) failure to reimburse business expenses for mileage, uniforms, and cell phone use, (2) excessive heat violations, (3) WARN Act violation, (4) failure to provide meal periods, (5) failure to maintain accurate wage statements, (6) failure to maintain accurate records, (7) waiting time penalties/failure to timely pay final wages, (8) failure to provide a safe and healthful working environment and have a proper injury and illness policy, (9) failure to provide notice of potential Covid-19 exposure, (10) failure to provide clean drinking water, (11) failure to provide access to shade, (12) failure to pay minimum, straight time, and overtime wages, (13) failure to pay reporting time pay, (14) failure to provide seating, and (15) retaliation for complaints of occupational safety hazards.

4

After settling *Gonzalez I*, Gonzalez filed a second PAGA lawsuit in Ventura County Superior Court in November 2022 (Case No. 56-2022-00571822-CU-OE-VTA) (*Gonzalez II*). Gonzalez alleged 16 predicate violations, which were listed in his April and May 2021 amended PAGA notices and overlapped with the violations raised by Appellants. Appellants filed a motion to intervene in *Gonzalez II* and a petition to coordinate *Gonzalez II* with their lawsuit in Orange County Superior Court.

Gonzalez and APP settled *Gonzalez II*. The PAGA settlement covered underlying violations for the alleged failure to pay minimum, straight and overtime wages, meal and rest period violations, failure to reimburse business expenses, and failure to pay timely final wages from July 15, 2021, to the date of judgment. For the remaining alleged predicate violations, the settlement covered the period from July 28, 2019, to the date of judgment.[4] Gonzalez moved to approve the PAGA settlement in Ventura County Superior Court.

The LWDA requested that the trial court deny settlement approval in *Gonzalez II*. It argued Gonzalez impermissibly sought to settle the PAGA claim without properly exhausting the underlying predicate violations, the parties had not properly evaluated the violations (particularly those regarding heat and proper seating), "rush[ed] to settlement," and possibly engaged in a reverse auction. A reverse auction occurs when a defendant

---

[4] A PAGA plaintiff may release PAGA claims beyond the one-year limitation period if the defendant employer waives the statute of limitations defense in the settlement. (See *Amaro v. Anaheim Arena Management, LLC* (2021) 69 Cal.App.5th 521, 541-543 (*Amaro*).)

facing multiple lawsuits picks the most ineffectual lawyers to negotiate a settlement.

APP responded to the LWDA's comments and attached a supporting declaration from Scott Saddler, APP's Vice President of Operations and Safety. Saddler's declaration pertained to APP's policies regarding suitable seating in the workplace. The trial court overruled Appellants' objections to Saddler's declaration.

In December 2022, the Judicial Council of California authorized the Orange County Superior Court to assign a coordination motion judge. (Code Civ. Proc., § 404.) Two weeks later, the Ventura County Superior Court heard Appellants' motion to intervene and Gonzalez's motion for settlement approval. The court denied Appellants' motion for mandatory and permissive intervention. It found Appellants were "unable to show inadequacy of representation so as to warrant mandatory intervention," and denied permissive intervention because they were unable to establish that "their reasons for intervention outweigh any opposition by [Gonzalez and APP]."

The trial court also approved the PAGA settlement in *Gonzalez II*. It found the settlement "fair, adequate, and reasonable" after considering the pleadings, the LWDA's comments, and the parties' arguments at the hearing. The court declined to enter judgment because of the pending motion to coordinate filed in Orange County Superior Court. (See Cal. Rules of Court, rule 3.515(i).)

Appellants filed a motion to set aside the judgment. The trial court denied the motion because there had been no judgment entered in *Gonzalez II* and Appellants were not entitled to relief under Code of Civil Procedure section 663a. After the Orange County Superior Court denied Appellants' petition to

6

coordinate, the Ventura County Superior Court entered judgment in *Gonzalez II*.

## DISCUSSION

*Rule 3.515 and coordination laws*

Appellants contend the trial court violated California Rules of Court,[5] rule 3.515 and other coordination statutes (Code Civ. Proc., §§ 404.1-404.7) when it approved the PAGA settlement after a coordination motion judge had been assigned. We disagree.

Rule 3.515(i) provides: "In the absence of a stay order, a court receiving an order assigning a coordination motion judge may continue to exercise jurisdiction over the included action for purposes of all pretrial and discovery proceedings, but no trial may be commenced and no judgment may be entered in that action unless trial of the action had commenced before the assignment of the coordination motion judge." Additionally, Code of Civil Procedure section 404.5 provides: "Pending any determination of whether coordination is appropriate, the judge making that determination *may* stay any action being considered for, or affecting an action being considered for, coordination." (Italics added.)

Because there was no stay order here, the Ventura County Superior Court continued to have jurisdiction over *Gonzalez II* and did not violate coordination laws when it presided over the motion for settlement approval. Nor did the court commence trial or enter judgment while the coordination petition was pending. To the contrary, the trial court acknowledged it could not enter judgment because the coordination petition was pending.

---

[5] Further unspecified rule references are to the California Rules of Court.

7

Nothing in the coordination rules or statutes prohibited the court from ruling on the settlement approval motion. We cannot read into rule 3.515 or the coordination statutes such a prohibition. (See *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 545 [in construing a statute, the court "may not broaden or narrow the scope of the provision by reading into it language that does not appear in it or reading out of it language that does"].)

Appellants rely on *Keenan v. Superior Court* (1980) 111 Cal.App.3d 336, but that case is distinguishable. *Keenan* involved five related actions—three in Los Angeles County Superior Court and two in El Dorado County Superior Court. (*Id.* at p. 339.) Keenan moved for coordination, and the assigned coordination motion judge did not issue a stay order. (*Id.* at pp. 339-340, 343.) While the coordination motion was pending, the Los Angeles County Superior Court transferred three cases to El Dorado County Superior Court. (*Id.* at p. 340.) The Court of Appeal vacated the transfer order because it interfered with the coordination judge's duties under the law. (*Id.* at pp. 343-344.) Notably, coordination law under former rule 1541(b)[6] "enjoins the trial judge to 'assume an active role in managing . . . pretrial . . . and trial proceedings . . .' " and gives the coordination judge "flexibility in selecting the place or places where judicial activities may be conducted." (*Keenan,* at pp. 341-342.) The change of venue order in *Keenan* was inconsistent with the coordination judge's power to decide the place of trial. (*Id.* at p. 342.) But here, the Ventura County Superior Court did not interfere with the coordination judge's express duties under rule 3.541.

---

[6] Former rule 1541 has been renumbered rule 3.541.

8

Appellants also rely on *Isaak v. Superior Court* (2022) 73 Cal.App.5th 792, 800, in which the Court of Appeal held that calendar preference was properly denied where the law governing calendar preference conflicted with laws governing coordination proceedings.  But unlike *Isaak*, the order approving the *Gonzalez II* settlement did not conflict with any coordination rules or statutes.

Nothing in the coordination rules and statutes prohibited the Ventura County Superior Court from approving the PAGA settlement.

*Declaration of Scott Saddler*

Next, appellants argue the trial court erred in overruling their objection to Scott Saddler's declaration because it contained inadmissible opinion or hearsay.  We are not persuaded.

We review a trial court's ruling on evidentiary objections for abuse of discretion.  (*Mackey v. Trustees of California State University* (2019) 31 Cal.App.5th 640, 657.)  Saddler declared he was the Vice President of Operations and Safety and was "familiar with APP's operations, its work processes, and the employees' different job functions in the workplace."  He described APP's general work operations and explained that seats are provided to "all employees wherever possible."  He also stated that some employees are not provided seats because the nature of their jobs requires them to stand, but those employees are informed they can sit and rest whenever needed.  In our view, Saddler's declaration laid the proper foundation for his factual statements based on his own personal knowledge, not inadmissible hearsay.

*Jurisdiction/PAGA exhaustion*

Appellants also contend the trial court lacked jurisdiction to hear the motion for settlement approval because Gonzalez did

9

not exhaust his administrative remedies before filing his PAGA action.  We disagree.

Under PAGA, "an aggrieved employee must provide notice to the employer and the state of the specific provisions of the Labor Code alleged to have been violated, including 'the facts and theories to support the alleged violation.'  (§ 2699.3, subd. (a)(1)(A); [citations].)  The 'evident purpose' of this notice requirement is to afford the LWDA the opportunity to decide whether to allocate scarce resources to an investigation of the violations alleged and to allow the employer to submit a response to the LWDA."  (*Moniz v. Adecco USA, Inc.* (2021) 72 Cal.App.5th 56, 80 (*Moniz*).)

Here, Gonzalez submitted amended PAGA notices to the LWDA in April and May 2021, which included the alleged violations raised in the *Gonzalez II* lawsuit.  *Gonzalez II* was filed after the requisite waiting period to allow the LWDA to investigate the alleged violations.  (§ 2699.3, subd. (a)(2)(B).)  The LWDA did not issue a citation.

*Settlement approval*

Appellants argue the trial court failed to review the settlement for fairness, adequacy, or reasonableness.  We conclude otherwise.

A trial court must "review and approve" a PAGA settlement to ensure the " 'negotiated resolution is fair to those affected.' " (§ 2699, subd. (*l*)(2); *Moniz, supra*, 72 Cal.App.5th at p. 76.)  In reviewing the PAGA settlement, the court should determine "whether it is fair, reasonable, and adequate in view of PAGA's purposes to remediate present labor law violations, deter future ones, and to maximize enforcement of state labor laws."  (*Moniz*, at p. 77.)  The trial court can evaluate factors such as the strength of the plaintiff's case, the risk, expense, complexity, and

likely duration of further litigation, the extent of discovery completed and stage of the proceedings, the experience and views of counsel, the presence of a government participant, and the amount of the offered settlement. (See *Kullar v. Foot Locker Retail Inc.* (2008) 168 Cal.App.4th 116, 128; *Moniz*, at p. 76.)

We review the trial court's approval of the settlement for abuse of discretion. (*Moniz, supra*, 72 Cal.App.5th at p. 78.) "The appellate court ' "make[s] no independent determination whether the settlement terms are 'fair, adequate and reasonable.' " ' [Citation.] 'Great weight is accorded the trial judge's views. The trial judge " 'is exposed to the litigants, and their strategies, positions and proofs. [They are] aware of the expense and possible legal bars to success. Simply stated, [they are] on the firing line and can evaluate the action accordingly.' " [Citation.] To merit reversal, both an abuse of discretion by the trial court must be "clear" and the demonstration of it on appeal "strong." ' " (*Amaro, supra*, 69 Cal.App.5th 534-535.) " 'The abuse of discretion is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary or capricious.' " (*Id.* at p. 535.)

In approving the PAGA settlement here, the trial court considered the moving papers, the LWDA's comments, and the arguments at the hearing. Gonzalez's moving papers set forth several of the *Kullar* factors that weighed in favor of settlement. For instance, he argued the relative strengths of the alleged violations and realistic range of outcomes in litigation favored settlement. Gonzalez acknowledged that APP "changed its operations to significantly improve its practices" after a previous

11

class action settlement in another case in 2019, and that there was a "significant risk" he would not prevail. As to the risk and complexity of further litigation, he argued that establishing additional violations and interviewing additional aggrieved employees would be time consuming and expensive. As to counsel's experience and views, Gonzalez's attorney declared he had extensive experience in wage-related employment disputes and class actions. He also explained that he evaluated the strength and value of the PAGA claim for settlement purposes and based his evaluation on information informally provided by APP, such as handbooks and wage statements, and his own investigation including employee interviews. Gonzalez contended the settlement fell within the range of an acceptable settlement, estimating $125,000 represented approximately 15% of APP's plausible maximum exposure. The trial court could reasonably agree that the *Kullar* factors weighed in favor of settlement. Appellants do not demonstrate otherwise.

Appellants argue the settlement should not have been approved because there was a "reverse auction" of the PAGA claim such that APP "sold" the claim to Gonzalez, who was "willing to resolve the case for the lowest value." In our view, substantial evidence supports the finding there was no collusion or bad faith. And to the extent Appellants argue the trial court ignored LWDA's comments, the record reflects otherwise. The trial court expressly reviewed LWDA's comments.

*Motion to intervene*

Appellants contend the trial court erred in denying their motion to intervene. We conclude there was no error.

Code of Civil Procedure section 387 allows either mandatory or permissive intervention. For mandatory intervention, the nonparty must have "an interest relating to the

12

property or transaction that is the subject of the action and that person is so situated that the disposition of the action may impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by one or more of the existing parties." (Code Civ. Proc., § 387, subd. (d)(1)(B).) The moving party bears the burden of proving entitlement to intervention. (*Accurso v. In-N-Out Burgers* (2023) 94 Cal.App.5th 1128, 1137, review granted Nov. 29, 2023, S282173 (*Accurso*).)

Here, the trial court denied mandatory intervention on the ground that Appellants' interests were adequately represented.[7] To determine whether an interest was adequately represented, the court considers three factors: " '(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect. [Citation.] [¶] The most important factor in determining the adequacy of representation is how the interest compares with the interests of existing parties.' " (*Accurso*, *supra*, 94 Cal.App.5th at pp. 1137-1138, review granted.) Where, as is the case here, " 'an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises.'

___

[7] Appellants argue the trial court erred in finding they lacked a direct and immediate interest pursuant to *Turrieta v. Lyft* (2021) 69 Cal.App.5th 955, 976, review granted January 5, 2022, S271721. We agree because Appellants had standing to intervene (*Moniz*, *supra*, 72 Cal.App.5th at pp. 72-73; *Uribe v. Crown Building Maintenance Co.* (2021) 70 Cal.App.5th 986, 999-1000). But we nonetheless conclude Appellants did not meet the standards for mandatory and permissive intervention.

13

[Citation.] 'If the applicant's interest is identical to that of one of the present parties, a compelling showing [is] . . . required to demonstrate inadequate representation.' " (*Id.* at p. 1138.)

Appellants and Gonzalez share identical interests because they seek civil penalties pursuant to PAGA on behalf of the same group of aggrieved employees based on overlapping labor violations. Thus, Appellants were required to make a " 'compelling showing' " to demonstrate inadequate representation. (*Accurso*, *supra*, 94 Cal.App.5th at p. 1138, review granted.) They did not do so. Appellants do not show that Gonzalez was not willing or capable of making similar arguments nor show Appellants would offer necessary elements to the proceedings that Gonzalez would otherwise neglect.

Appellants argue their interests were inadequately represented because Gonzalez failed to properly exhaust all the PAGA violations raised in *Gonzalez II* and because the settlement represented "a fraction of their value." But Gonzalez exhausted the predicate violations for his PAGA lawsuit in his April and May 2021 amended PAGA notices. The trial court also did not abuse its discretion in concluding the settlement was fair and reasonable. And substantial evidence supports there was no collusion. Thus, Appellants do not meet the standards for mandatory intervention.

For permissive intervention, Appellants must satisfy the following requirements: "(1) the proper procedures have been followed; (2) the nonparty has a direct and immediate interest in the action; (3) the intervention will not enlarge the issues in the litigation; and (4) the reasons for the intervention outweigh any opposition by the parties presently in the action." (*Reliance Ins. Co. v. Superior Court* (2000) 84 Cal.App.4th 383, 386; Code Civ. Proc., § 387, subd. (d)(2).) We review the trial court's denial of an

14

application for permissive intervention for an abuse of discretion. (*Reliance*, at p. 386; *Truck Ins. Exchange v. Superior Court* (1997) 60 Cal.App.4th 342, 345.)

The trial court denied permissive intervention because it reasonably found that Appellants' reasons for intervention did not outweigh the opposition by Gonzalez. Gonzalez opposed intervention because he maintained that he adequately represented Appellants' interests and shared the same ultimate objective as Appellants. Gonzalez also argued intervention would delay or derail resolution of the PAGA claim. (See *Sanders v. Pacific Gas & Elec. Co.* (1975) 53 Cal.App.3d 661, 669.) The trial court did not abuse its discretion in denying permissive intervention.

DISPOSITION

The judgment is affirmed. Respondents shall recover costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

BALTODANO, J.

We concur:

GILBERT, P. J.        YEGAN, J.

15

Jeffrey G. Bennett, Judge

Superior Court County of Ventura

_____

Law Offices of Sima Farde and Sima Farde for Movants and Appellants.

Moon Law Group, H. Scott Leviant, Kane Moon and Mariam Ghazaryan for Plaintiff and Respondent.

Sheppard, Mullin, Richter & Hampton, Ronda D. Jamgotchian, Paul Berkowitz and Kristi L. Thomas for Defendant and Respondent.