[No. D017794. Fourth Dist., Div. One. Dec. 10, 1992.]

McGHAN MEDICAL CORPORATION et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
DENISE HOGAN et al., Real Parties in Interest.

## Counsel

Palmieri, Tyler, Wiener, Wilhelm & Waldron, Frank C. Rothrock, L. Richard Rawls, D. Susan Wiens, Gordon & Rees, Daniel J. Herling, Jack B. McCowan, Jr., Dinsmore & Shohl, Frank C. Woodside III, Andrew C. Osterbrock, Brobeck, Phleger & Harrison, Meredith N. Landy, William B. Griffin, Diane S. Rice, Lynch, Loofbourrow, Helmenstine, Gilardi & Grummer, Diane C. Miller, Lauren M. Terek, Robert S. Niemann, Kristina F. Warren, McInnis, Fitzgerald, Rees, Sharkey & McIntyre, Cary W. Miller, Shelley A. Carder, Nixon, Hargrave, Devans & Doyle, David Tennant, Baker, Hostetler, McCutchen & Black, Peter W. James, Brooke Richter, Dickson, Carlson & Campillo, Hall R. Marston, Jean A. Hobart, Debra E. Pole, Haight, Brown & Bonesteel, Jeffrey B. Margulies, Michael J. Bonesteel, Dennis K. Wheeler, Thomas M. Moore, Sedgwick, Detert, Moran & Arnold, Michael F. Healy and Kathleen D. Patterson for Petitioners.

No appearance for Respondent.

Caputo, Liccardo, Rossi, Sturges & McNeil, Salvador A. Liccardo, Wes W. Wagnon, Cynthia L. Chase, Craig Needham, Higgs, Fletcher & Mack, John Morris, Paul J. Pfingst, La Follette, Johnson, De Haas, Fesler & Ames, Daniel D. Sorenson, Don Fesler, Robinson & Phillips, Mark P. Robinson, Berlin, Albert & Dunbar, Andrew S. Albert, Michael D. Berlin, William P. Daley, Eugene A. Hooser, Patrick J. Barry, Michael H. Fish, Robins, Kaplan, Miller & Ciresi, Joseph L. Dunn, Linda L. Hagerty, Ramon Lopez, Anne Andrews, Weldon Diggs, Linda M. Wilde, Ropers, Majeski, Kohn, Bentley, Wagner & Kane, Paul D. Herbert, Charles M. Louderback, Belli,

Belli, Brown, Monzione, Fabbro & Zakaria, Steven A. Fabbro, Cullum & Sena, Cheryl A. Sena, Choulos, Choulos & Wyle, Vasilios B. Choulos, Herron & Herron, Ronald K. Herron, Wohl & Eggleston, Bernadette M. Eggleston, Brayton, Gisvold & Harley, Patricia E. Henle, Wilson, Szumowski & Bolton, Patricia A. Szumowski, Hersh & Hersh, Leroy Hersh, Rodney A. Klein, Simke, Chodos, Silberfeld & Anteau, Roman M. Silberfeld, Greene, Broillet, Taylor & Wheeler, Christine D. Spagnoli, Kevin N. Donnelly, Wilkie Cheong, Raymond L. Henke and Nick Allis for Real Parties in Interest.

## OPINION

FROEHLICH, J.—We deal here with Code of Civil Procedure[1] section 404 et seq., which provide for the "coordination" of actions. Section 404.6 provides that an order of the superior court either granting or denying coordination may be reviewed by a timely petition for mandamus directed to the Court of Appeal. The petition herein, filed in accordance with that authority, seeks reversal of a superior court order denying coordination.

A great number of complaints have been filed in recent months seeking damages for personal injuries sustained by women who have utilized breast implants. The defendants in these cases are various manufacturers of the implant devices, producers of implant materials, and physicians who prescribed or administered the implants. We are advised by counsel for petitioners that some 600 cases are now pending in over 20 counties in California, and that additional cases are being filed almost daily. Those opposing the petition are more conservative in their estimate of the volume of litigation, but concede that at least 300 separate cases have been filed and are now pending. Since some of these cases involve multiple plaintiffs, and most of them join either several or numerous defendants, the number of parties involved must run in the thousands.

In July of this year the petitioners, in accordance with section 404, petitioned the Judicial Council to commence procedures leading to coordination of these cases. The Judicial Council, on July 28, 1992, assigned Judge Robert J. O'Neill of the San Diego County Superior Court as coordination motion judge "to determine whether coordination of the included actions . . . is appropriate." Judge O'Neill gave notice of hearings, received written memoranda and points and authorities, and entertained oral argument. Judge O'Neill was no stranger to the "breast implant cases" (as they were denominated by the Judicial Council) since he had served as coordinating judge for

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise specified. Rule references are to the California Rules of Court.

most of the cases which had been filed and were then pending in his own county.

On October 14, 1992, Judge O'Neill issued an order denying the petition for coordination. The ground for denial was that "common questions of fact or law do not predominate in that the cases involve different implants, different designs, different warnings, different defendants, different theories of defect, different modes of failure, and different injuries."[2]

Petitioners seek reversal of this order, contending that Judge O'Neill did not properly weigh the advantages of coordination against the disadvantages noted in his order, and that he applied the wrong legal standard in reaching his ruling.

Our first concern is to determine the appropriate standard of review.[3] Petitioners claim that the court's ruling reflected no findings of fact, but instead was the application of legal principles to undisputed facts, leading, they say, to our prerogative of de novo review. The parties in opposition, on

[2]The full text of Judge O'Neill's order is as follows (following introductory paragraphs):

"[T]he petition for coordination is denied pursuant to Code of Civil Procedure section 404.1, as the Court finds that common questions of fact or law do not predominate in that the cases involve different implants, different designs, different warnings, different defendants, different theories of defect, different modes of failure, and different injuries.

"While there are, in these cases, certain common issues, the differences among the cases and the sheer number of them, presently pending around the state and those yet to be filed, are such that coordination would be impractical, and would result in unnecessary delay of discovery and of trial.

"The unmanageability of this large number of cases would provide none of the economies of scale which are the goals of coordination.

"The Court intends to communicate with the five major counties where the bulk of these cases are situated and suggest establishment of a steering committee wherein those courts would cooperate to facilitate discovery procedures and case management, thereby reaping the benefits of coordination through judicial cooperation.

"Additionally, this Court finds that coordination would inconvenience the plaintiffs, their counsel, defendant health care providers, and witnesses by requiring them to travel to a selected site or sites to process their cases; would tax judicial resources by sending hundreds, and possibly a thousand cases, to one county; and any possibility of duplicate and inconsistent rulings, orders, or judgments can easily be addressed and minimized by the relatively few judges hearing the breast implant cases filed in the various California courts."

[3]We find no direct authority on this question. The only case mentioning the issue is *Pesses* v. *Superior Court* (1980) 107 Cal.App.3d 117 [165 Cal.Rptr. 680]. The review in that case was of an order of a coordinating judge denying a motion to reassign cases which had previously been coordinated in San Diego County to their county of origin. Without specifically discussing the scope of review the appellate court stated that the ruling was discretionary with the coordinating judge and such discretion had not been abused. The case is not controlling in our situation because it pertained to a ruling by an established coordinating judge with respect to cases then under his jurisdiction. The case falls within that class in which a trial court's determination of matters within its own administrative ambit should be given deference.

the other hand, contend that the decision rests upon a determination and weighing of factual issues, and that although evidence bearing on these issues was presented by declarations and other documentation equally available to the Court of Appeal, the trial court's determination should be viewed as an exercise of discretion, to be reversed only upon a finding of abuse.

Our analysis of the case suggests that the trial court's ruling was a classic example of a "mixed question of fact and law," as that issue was exhaustively analyzed in *People* v. *Louis* (1986) 42 Cal.3d 969 [232 Cal.Rptr. 110, 728 P.2d 180]. In *Louis* the court was faced with the same threshold issue we encounter: "what standard we should use in reviewing the [trial court] ruling." (*Id.* at p. 984.) Mixed questions were identified as "those 'in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the [relevant legal] standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.'" (*Id.* at p. 984, quoting *Pullman-Standard* v. *Swint* (1982) 456 U.S. 273, 289, fn. 19 [72 L.Ed.2d 66, 80, 102 S.Ct. 1781].) In discussing the appellate review of mixed factual/legal rulings the court quoted extensively from *United States* v. *McConney* (9th Cir. 1984) 728 F.2d 1195, 1199-1204. ■ Rather than reprint the lengthily quoted material, we paraphrase: There are three steps involved in deciding a mixed fact/law question. The first step is the establishment of basic, primary or historical facts. The second is the selection of the applicable law. The third is the application of law to the facts. All three trial court determinations are subject to appellate review. Questions of fact are reviewed by giving deference to the trial court's decision. Questions of law are reviewed under a nondeferential standard, affording plenary review. (*People* v. *Louis*, *supra*, 42 Cal.3d at p. 985.) However, as to the third step, the application of law to fact, difficulty is encountered and views as to the correct approach are mixed. There are guideposts for working one's way out of confusion, however, and now we quote *McConney* in full as it was similarly quoted in *People* v. *Louis*, *supra*, 42 Cal.3d at pages 986-987:

" 'The appropriate standard of review for a [trial] judge's application of law to fact may be determined . . . by reference to the sound principles which underlie the settled rules of appellate review just discussed. If the concerns of judicial administration—efficiency, accuracy, and precedential weight—make it more appropriate for a [trial] judge to determine whether the established facts fall within the relevant legal definition, we should subject his determination to deferential, clearly erroneous review. If, on the other hand, the concerns of judicial administration favor the appellate court, we should subject the [trial] judge's finding to de novo review. Thus, in each case, the pivotal question is do the concerns of judicial administration favor the [trial] court or do they favor the appellate court.

" 'In our view, the key to the resolution of this question is the nature of the inquiry that is required to decide "whether the rule of law as applied to the established facts is or is not violated." [Citation.] If application of the rule of law to the facts requires an inquiry that is "essentially factual," [citation]— one that is founded "on the application of the fact-finding tribunal's experience with the mainsprings of human conduct," [citation]—the concerns of judicial administration will favor the [trial] court, and the [trial] court's determination should be classified as one of fact reviewable under the clearly erroneous standard. If, on the other hand, the question requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, then the concerns of judicial administration will favor the appellate court, and the question should be classified as one of law and reviewed de novo.

" 'As the Supreme Court appeared to indicate in *Pullman-Standard* [v. *Swint*], 456 U.S. [273], 289 n. 19, 102 S.Ct. [1781,] 1790 n. 19 [(1982)], the concerns of judicial administration will generally favor the appellate court, justifying de novo review. This is so because usually the application of law to fact will require the consideration of legal concepts and involve the exercise of judgment about the values underlying legal principles. . . .' "

We believe that the above quoted rules are applicable to this case because Judge O'Neill was required to make just the sort of three-step analysis above described. He first determined the "basic, primary, or historical facts." (*People* v. *Louis, supra,* 42 Cal.3d at p. 985.) These included his inventory of pending and expected cases and his assessment as to what extent the issues in the cases were common. The second step in the judge's deliberations was to select the law applicable to the petition (and there is of course no question about the applicable law, it being contained in section 404 et seq.). The crucial step, the third, was the application of law to the facts.

We find no fault with the trial court's analysis of the first two steps in this decisional transaction. It is the court's application of law to facts and the resultant ruling which present crucial review factors. The judge's application of law to fact was not based upon his " " "experience with the mainsprings of human conduct." ' " (*People* v. *Louis, supra,* 42 Cal.3d at pp. 986-987.) It was, contrarily, a problem requiring the exercise of judgment " 'about the values that animate legal principles' " and consideration of the impact of same on the " 'concerns of judicial administration.' " (*Ibid.*)

█ We make this conclusion from a consideration of the objectives and effects of the coordination procedure. This case related not to the trial court's administration of its own calendar or cases, but with its determination of the future administration of hundreds of cases on the docket of not

only this court but of numerous other trial courts throughout the state. The decision will affect in a very substantial way the administration of justice throughout our judicial system. Not only will the labors of other trial courts be influenced, but work of the Courts of Appeal will also be programmed by this order. The continued administration of these hundreds of cases throughout our system can reasonably be predicted to result in petitions for extraordinary relief pertaining to discovery and other pretrial matters, which at present will be brought in all of our six districts of Courts of Appeal and the several divisions of the divisional districts. The prospect of alleviating this vision of appellate firestorm of paperwork indeed motivates us to view this trial court's order as one demanding full review.

The specific discretionary call in this case was the ultimate conclusion that the benefit to be derived by coordination was outweighed by complications and problems the judge anticipated would result from attempted coordination. This decision, we apprehend, is one not necessarily made better by a trial court judge than by an appellate tribunal. In accordance with the test set forth in our above quote from *People* v. *Louis*, this is a decision which requires the "exercise [of] judgment about the values that animate legal principles," and hence " 'the concerns of judicial administration . . . favor the appellate court, and the question should be classified as one of law and reviewed de novo.' " (*People* v. *Louis, supra*, 42 Cal.3d at pp. 986-987.) We therefore proceed in our analysis on the basis of plenary review.

■ The judge in his order explained that there was considerable lack of commonality in terms of parties and issues, that because of the "sheer number" of cases coordination would be impractical, that there would be no economy of scale, that it would be impractical to "send hundreds, and possibly a thousand cases, to any one county," and that coordination would result in inconvenience to parties, counsel and health care providers by requiring them to travel to selected sites to process their cases. The court concluded that the ends of coordination could be achieved by voluntary cooperation among the judges in the major counties in which the cases were pending. The court did not intone one of the principal objectives of coordination: that it "promote the ends of justice." (§ 404.1.) Since the other factors enumerated by the judge in his order obviously relate to the ultimate objective of the "ends of justice," we do not criticize the trial court for omitting this conclusory determination.

However, the other factors mentioned by the judge appear to suggest a misconception on his part as to the requirements of a coordinated proceeding. It is true that the statute speaks of "one judge hearing all of the actions for all purposes in a selected site or sites," (§ 404.1) and that when coordination is ordered "the Judicial Council . . . shall assign a judge to hear and

determine the actions in the site . . . ." (§ 404.3.) It is also to be noted, however, that section 404.7 accords to the Judicial Council the power by rule to order the practice for coordinated actions, "notwithstanding any other provision of law." It has been noted that this provision gives the Judicial Council broad discretion to adopt procedures which will foster the goals of coordination, and that such procedures may reconcile apparent inconsistencies in the statute. (*Keenan* v. *Superior Court* (1980) 111 Cal.App.3d 336, 341 [168 Cal.Rptr. 561].)

A review of applicable rules adopted by the Judicial Council indicates that the procedures which may be utilized by the coordinating judge are flexible indeed. Rule 1541 provides that the court may order any issue or defense tried separately; hearings may be conducted at various sites in the state as may be selected to provide convenience to witnesses, parties, and counsel; the court can prescribe all manner of pretrial discovery devices designed to aid the litigation. Rule 1543 gives the coordinating judge the power to sever cases or claims from the coordination pool and transfer them back to their original venue. Rule 1528 gives the judge power to try specific issues separately. Generally, we are satisfied that it is the intent of the Judicial Council to vest in the coordinating judge whatever great breadth of discretion may be necessary and appropriate to ease the transition through the judicial system of the logjam of cases which gives rise to coordination. If the parties or court otherwise feel restriction from the statute or rules, our comments on the judge's reservations about coordination, which of course become law of this case, should resolve the same.

Parties opposing the petition for coordination have called to our attention various findings made by the trial court judge said to be impediments to a successful coordination. We respond briefly to some of these concerns:

1. *Noncommon Cases.* Some 60 or so of the several hundred pending cases focus upon medical doctors as the principal defendant, the typical claim being failure adequately to advise of the risk of breast implants. Counsel representing these defendants contend they will be prejudiced if required to march in lockstep litigation with the corporate defendants charged with defective products. It is claimed as to other cases, also, that some unique quality of the case impels its administration separate from a group of more common cases. Our answer to this contention is that the argument should be presented to the coordinating judge, who has the power under applicable rules to sever any such unique cases, or to make other provisions for same which will adequately address the concerns of those who can establish a unique status.

2. *Difficulty of Unified Trial or Discovery.* Plaintiffs' counsel and the trial judge assert that these cases cannot be tried in one forum, and that any

attempt to do so will create "gridlock." That these cases may be coordinated does not mean they need be tried in one forum; it does not even indicate that ultimate trial of the cases need be unified. The trial judge in his order extolled the benefits of "the establishment of a steering committee wherein those courts would cooperate to facilitate discovery procedures and case management." We see no reason why coordination need interfere with this vision of efficiency. Our concept is one of *enhancing* this outlook of cooperative administration by giving one judge central authority to make sure it occurs (not only with the four or five populous counties but in the twenty or so others which are not yet on the cooperative stream).

3.  *Requirement of Travel.* The court cited inconvenience to witnesses and parties through a requirement of travel to centralized sites of discovery and trial. As indicated above, it is entirely possible that a coordinating judge in this case will elect not to centralize trials. That he probably will elect to centralize and coordinate discovery and motion practice does not require burdensome travel. There is no reason why the coordinating judge cannot prescribe special rules by which discovery materials are lodged in a document center available to all counsel in their offices through computer networking (or lacking compatible computer availability, at least through fax communication). Centralized but yet convenient motion practice could be achieved by designating specific county courts, presumably in appropriately located urban counties, as unified motion courts.

4.  *Delay.* Some defense counsel have complained that coordination will necessarily cause delay, requiring all cases to progress through the stages of litigation in formation, and hence penalizing those counsel who have moved expeditiously to conclude their litigation. It is possible that some delay in certain cases may be experienced. We view this potential detriment to the few to be a modest price to pay for the efficiency to be gained by the majority of cases through coordination. Also, as we have noted, coordination of procedures at this time does not preclude the coordination judge from granting separate trials of cases where special circumstance warrants individual, or special class, treatment. One of the purposes, in our view, of a centralized coordinating authority is to vest in one administrator the power to organize the litigation in an efficient and equitable manner, for the benefit of all.

We now shift to an analysis of the benefits of coordination of this case. Admittedly, any decision as to results of coordination is a prediction; all predictions are to some extent speculative; all predictions can turn out to be inaccurate; hence all determinations as to whether to coordinate a case are but best estimates. Our best prediction about the coordination of these breast

implant cases, however, is that it will provide enormous benefit to all of the litigants. We have perused a sample batch of complaints. Aside from the medical malpractice claims, the complaints all allege damages as the result of some product defect. While the products are several and differ in terms of manufacture, design and content, they are all similar in that they relate to breast implant devices. The causes of action in most of the complaints are uniform (strict products liability, negligence, breach of warranty, fraud and deceit, misrepresentation, intentional infliction of emotional distress, loss of consortium). We are absolutely satisfied that the preparation for trial in terms of depositions, interrogatories, admissions, collection of physical data, etc., will be better achieved if done in a coordinated manner.

We would predict (and our predictions are supported by representations of the moving parties) that a great volume of motion practice will precede trial of most of these cases. Assuredly some of the aforementioned classes of causes of action will be subject to demurrer and summary judgment by some of the defendants. The rulings on these motions should be uniform. If possible, trial rulings should be accomplished in a manner permitting uniform and centralized resolution on appeal. This sort of treatment can be achieved by coordination of motion practice. Notwithstanding the trial judge's optimism, we doubt that it can be otherwise achieved.

What will happen if we are partially or totally wrong in our predictions? Presumably the coordinating judge will determine that some proceeding which we, or which later petitioning parties, have deemed beneficial is not beneficial. Upon such determination the judge will modify the procedure, or terminate some portion of the coordinated process. It should be noted that our appraisal of this court's scope of review, as set forth above, related to review of an initial order of coordination—the establishment of the process whereby benefits are sought to be achieved. Once coordination is established and commenced, the then rulings of the coordinating judge will most likely not be the mixed bag of law and fact we addressed above. They will be administrative rulings in the process of the hands-on control of specific cases by a trial judge. We would expect that such rulings would be reviewable only upon a basis of according substantial deference to the trial court's opinions.

We therefore reverse the order of the trial court, and remand the case with instructions to order all the breast implant cases coordinated, that this order be reported to the Chairperson of the Judicial Council with a request that a judge be assigned to hear and determine the actions, and that the judge issue such other orders as in his discretion he deems appropriate, including such stays as may be deemed advisable in accordance with section 404.5. The

stays of all proceedings issued by this court on November 6 and 20, 1992, shall be vacated as of December 16, 1992, which date is selected to give the trial court ample opportunity to deal with the cessation or continuance of stay, or partial stays, as may be deemed appropriate.

All parties shall bear their own costs associated with this writ proceeding.

It is ordered that copies of this opinion be mailed to all parties who have appeared in this action by filing briefs or specifically joining in the briefs of other parties.

Notice of the filing of this order and the vacating of the stays shall be given to all other parties in interest by an appropriate notice which shall alert them to the filing of this opinion and the entitlement to copies of same by specific request to this court.

Todd, Acting P. J., and Benke, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied February 18, 1993.