Filed 3/6/15  P. v. Ingram CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>THOMAS INGRAM,<br><br>　　　Defendant and Appellant. | D064936<br><br><br><br>(Super. Ct. No. SCD122775) |

APPEAL from an order of the Superior Court of San Diego County, David J. Danielsen, Judge.  Affirmed.

Elizabeth Garfinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

In 1996 Thomas Ingram was convicted of one count of petty theft with a prior theft conviction (Pen. Code, § 484/666)[1] and one count of commercial burglary (§ 459). Because the court found true the allegations that Ingram had been convicted of three prior offenses that were serious or violent felony strikes within the meaning of sections 667, subdivisions (b) through (i), and 1170.12, the court sentenced Ingram to an indeterminate term of 25 years to life for his convictions. In 2013 Ingram petitioned to recall his sentence pursuant to the recently enacted Three Strikes Reform Act of 2012 (§ 1170.126 et seq.) (TSRA). The court denied his petition, and this appeal followed.[2]

I

FACTUAL AND PROCEDURAL BACKGROUND

A. The Current Offenses and Sentence

In 1996 Ingram was convicted of one count of petty theft with a prior theft conviction (§ 484/666) and one count of commercial burglary (§ 459). In a bifurcated proceeding, the court found true the allegations Ingram had been convicted of three offenses for which he served a term in state prison within the meaning of section 667.5, subdivision (b), and had three convictions for offenses that constituted serious or violent felony strikes within the meaning of sections 667, subdivisions (b) through (i), and

_____

[1]    All further statutory references are to the Penal Code unless otherwise specified.

[2]    In a petition for writ of habeas corpus filed by Ingram, considered concurrently with this appeal, he also asserts his attorney provided ineffective assistance of counsel at the hearing on his petition because the attorney did not call a particular witness to testify at that hearing. For the reasons stated in our separate order filed concurrently with this opinion, we have also denied his petition for writ of habeas corpus.

1170.12. The court sentenced Ingram to an indeterminate term of 25 years to life, but struck the enhancements for his prior prison terms.

B. The Recall Petition

In 2013, Ingram filed a petition seeking to recall his sentence under the TSRA. The petition argued his current offense (the 1996 conviction) did not bar him from relief under the TSRA and his prior strike convictions did not disqualify him from resentencing under the TSRA; therefore, the court should find he was not currently dangerous, recall his sentence, and resentence him under the TSRA.

The People's reply to the petition to recall Ingram's sentence conceded he had prima facie shown he was qualified under the TSRA to be considered for resentencing. However, the People noted Ingram's record before the commitment offense involved crimes of violence in which he employed weapons, encompassed a prison record of violence that spanned a decade, and suggested Ingram suffered from serious and debilitating mental illness, as he has exhibited bizarre behavior leading to his participating in mental health services in prison. The People submitted the matter to the court's discretion on whether to resentence Ingram but argued that, were Ingram resentenced, he should be resentenced subject to postrelease community supervision.

The court denied the petition, concluding he posed an unreasonable risk of danger to public safety were he resentenced and released under the TSRA. Ingram timely appealed.

ANALYSIS

Ingram raises numerous challenges to the order denying his recall petition. He argues the order must be reversed because the prosecution was required to prove beyond a reasonable doubt that he posed an unreasonable risk of danger to public safety, and he was entitled to have a jury determine that issue,[3] and reversal is therefore required because he was denied the protections as to both the standard of proof and the proper decisionmaker. Ingram also contends the newly enacted provisions of Proposition 47, The Safe Neighborhoods and Schools Act (hereafter Proposition 47), adopted by the voters on November 4, 2014, superimposes on the TSRA a new definition for whether an inmate poses an unreasonable risk of danger to public safety for purposes of resentencing, and there is no substantial evidence to support the court's finding that he would pose an unreasonable risk of danger to public safety under Proposition 47's definitional strictures. Ingram finally asserts that, even assuming (1) the court was the proper decisionmaker, (2) it properly applied a preponderance of the evidence standard, and (3) it was not required to apply Proposition 47's more restrictive definition of dangerousness, there is no substantial evidence to support the court's finding that he would pose an unreasonable risk of danger to public safety were he resentenced under the TSRA.

---

[3] His counsel did not assert he had a right to a jury trial and therefore Ingram also asserts, in his companion petition for writ of habeas corpus, that he was deprived of effective assistance of counsel. Because we conclude in this appeal that Ingram was not entitled to a jury trial on his recall petition, we also necessarily reject that aspect of his writ petition asserting counsel was ineffective by not requesting a jury trial.

A. <u>Ingram's Sixth Amendment Claims</u>

Ingram first asserts that because the statutory scheme makes second strike sentencing the presumptive sentencing choice for persons eligible for resentencing under the TSRA, and only permits a departure from that sentence when there is a finding that a critical factor (i.e., the inmate poses an unreasonable risk of danger to public safety) is present, the critical factor of "dangerousness" is a determination that increases the sentence for the inmate beyond the presumptive sentencing choice. Ingram argues the principles announced in *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 provide Ingram with protections under the Sixth Amendment to the United States Constitution to require the prosecution to prove that factor beyond a reasonable doubt, and guarantees him the right to a jury trial on that factor.

1. *The Burden of Proof Claim*

Ingram first argues that, under *Apprendi*, the prosecution must prove the dangerousness factor beyond a reasonable doubt. This precise claim has been rejected by the courts in *People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279 (*Kaulick*) and *People v. Osuna* (2014) 225 Cal.App.4th 1020 (*Osuna*). The *Osuna* court, relying in part on *Kaulick*, "conclude[d] disqualifying factors need not be proven to a jury beyond a reasonable doubt where eligibility for resentencing under section 1170.126 is concerned." (*Osuna*, at p. 1038, fn. omitted.) *Osuna* held "*Apprendi* and its progeny do not apply to a determination of eligibility for resentencing under the Act" (*id.* at p. 1039) because "[a] finding an inmate is not eligible for resentencing under section 1170.126 does not increase or aggravate that individual's sentence; rather, it leaves him or her subject to the

5

sentence originally imposed. The trial court's determination here that defendant was armed with a firearm during the commission of his current offense did not increase the penalty to which defendant was already subject, but instead disqualified defendant from an act of lenity on the part of the electorate to which defendant was not constitutionally entitled." (*Id*. at p. 1040.) Similarly, *Kaulick* concluded that:

> "dangerousness is not a factor which enhances the sentence imposed when a defendant is resentenced under the Act; instead, dangerousness is a hurdle which must be crossed in order for a defendant to be resentenced at all. If the court finds that resentencing a prisoner would pose an unreasonable risk of danger, the court does not resentence the prisoner, and the petitioner simply finishes out the term to which he or she was originally sentenced. [¶] The maximum sentence to which Kaulick, and those similarly situated to him, is subject was, and shall always be, the indeterminate life term to which he was originally sentenced. While Proposition 36 presents him with an opportunity to be resentenced to a lesser term, unless certain facts are established, he is nonetheless still subject to the third strike sentence based on the facts established at the time he was originally sentenced. As such, a court's discretionary decision to decline to modify the sentence in his favor can be based on any otherwise appropriate factor (i.e., dangerousness), and such factor need not be established by proof beyond a reasonable doubt to a jury." (*Kaulick,* at p. 1303, fn. omitted.)

*Kaulick* buttressed its determination by noting "the United States Supreme Court has already concluded that its opinions regarding a defendant's Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt do not apply to limits on downward sentence modifications due to intervening laws," citing *Dillon v. U.S.* (2010) 560 U.S. 817. (*Kaulick, supra,* 215 Cal.App.4th at p. 1304.) As *Kaulick* explained:

> "At issue in *Dillon* was a modification to the sentencing guideline range for the offense of which the defendant was convicted. The law provided that a prisoner's sentence could be modified downward

6

when the range had been lowered; however, the law provided that a sentence could only be lowered if consistent with applicable policy statements. Those policy statements, in turn, provided that a sentence could not be reduced below the minimum sentence of an amended sentencing range except to the extent that the original term was below the original range. The Supreme Court had already held that, in order to avoid constitutional problems, the federal Sentencing Guidelines were advisory, rather than mandatory. The issue in *Dillon* was whether the policy statement, which did not permit reducing a sentence below the amended range except to the extent the original term was below the original range, must also be rendered advisory. [(*Dillon,* at p. 819.)] The Supreme Court concluded that it remained mandatory. This was so because the statute allowing resentencing when the sentencing range was lowered was, itself, not a plenary resentencing in the usual sense. Instead, the statute simply authorized a limited adjustment to an otherwise final sentence. [(*Dillon,* at pp. 825-826.)] The court stated, 'Notably, the sentence-modification proceedings authorized by [the statute] are not constitutionally compelled. We are aware of no constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent Guidelines amendments. Rather [the statute] represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines. [¶] Viewed that way, proceedings under [this statute] do not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt. Taking the original sentence as given, any facts found by a judge at a [modification downward] proceeding do not serve to increase the prescribed range of punishment; instead, they affect only the judge's exercise of discretion within that range.' [(*Dillon v. U.S., supra,* 560 U.S. at p. 828.)] Such decisions, stated the court, simply do not implicate Sixth Amendment rights. [(*Ibid.*)] . . . The language in *Dillon* is equally applicable here. The retrospective part of the Act is not constitutionally required, but an act of lenity on the part of the electorate. It does not provide for wholesale resentencing of eligible petitioners. Instead, it provides for a proceeding where the original sentence may be modified downward. Any facts found at such a proceeding, such as dangerousness, do not implicate Sixth Amendment issues. Thus, there is no constitutional requirement that the facts be established beyond a reasonable doubt." (*Kaulick, supra*, 215 Cal.App.4th at pp. 1304-1305.)

7

We agree with the analysis of *Kaulick* and *Osuna* and conclude the retrospective part of the TSRA is not constitutionally required, but instead represents an act of lenity on the part of the electorate permitting the potential for the original sentence to be modified downward. Facts found at such a proceeding, including the factor of dangerousness, do not implicate Sixth Amendment issues and need not be proved beyond a reasonable doubt.

2. *The Jury Trial Claim*

The same rationale convinces us that Ingram did not have a right to a jury trial on the issue of dangerousness. Both *Osuna* and *Kaulick* concluded that *Apprendi's* principles, which include the right to have a jury determine factors aggravating a sentence, do not apply to recall petitions under the TSRA. (*Osuna, supra*, 225 Cal.App.4th at p. at p. 1039 ["*Apprendi* and its progeny do not apply to a determination of eligibility for resentencing under the [TSRA]"]; *Kaulick, supra*, 215 Cal.App.4th at p. 1304 ["the United States Supreme Court has already concluded that its opinions regarding a defendant's Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt do not apply to limits on downward sentence modifications due to intervening laws"].) Although Ingram argues these cases were wrongly decided, and *Kaulick's* application of *Dillon* was erroneous, we do not believe *Kaulick's* conclusion as to *Dillon's* impact on downward sentence modifications under the TSRA was erroneous, and we conclude Ingram did not have the right to have a jury trial on the issue of dangerousness.

B. The Proposition 47 Claim

Ingram, by supplemental briefing, raises a new argument for reversal asserting the newly enacted provisions of Proposition 47, by adding section 1170.18, redefined the standard for determining whether an inmate poses an unreasonable risk of danger to public safety for purposes of resentencing under the TSRA. Ingram argues that, when this new definition is applied to his application under the TSRA, there is no substantial evidence to support the court's finding that he would pose an unreasonable risk of danger to public safety.[4]

On November 4, 2014, voters enacted Proposition 47, which became effective the next day. (Cal. Const., art. II, § 10, , subd. (a).) The focus of Proposition 47 was to render misdemeanors a class of certain drug- and theft-related offenses that previously were felonies or "wobblers," unless they were committed by certain ineligible defendants. Proposition 47 also created a new resentencing provision—section 1170.18—analogous to the resentencing provisions of the TSRA, and permitted a person currently serving a felony sentence for an offense that is now a misdemeanor to petition for a recall of that sentence and request resentencing in accordance with the offense statutes as added or amended by Proposition 47. (§ 1170.18, subd. (a).)

Among the lengthy provisions of Proposition 47, as presented to and adopted by the voters, is subdivision (c) of section 1170.18, the provision on which Ingram relies in the present appeal. That subdivision provides: "As used throughout this Code,

---

[4]     Ingram's supplemental briefing does not address, and we express no opinion on, whether Ingram might be eligible to bring a petition for recall under Proposition 47.

'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667" (§ 1170.18, subd. (c)), thereby incorporating by reference section 667, subdivision (e)(2)(C)(iv)'s list of particularly heinous felonies. Ingram asserts section 1170.18, subdivision (c), now limits a trial court's discretion to deny resentencing under the TSRA to those cases in which resentencing the defendant would pose an unreasonable risk he or she will commit one of the listed particularly heinous felonies and, because there was no substantial evidence to support a finding Ingram posed an unreasonable risk of committing one of the listed particularly heinous felonies, he argues the trial court's order must be reversed.

Our task is one of statutory construction.[5] Although the TSRA and Proposition 47 employ similar language, this does not inexorably require that the definition contained in section 1170.18, subdivision (c), must be read into section 1170.126, subdivision (f), because "[t]he literal language of a statute does not prevail if it conflicts with the lawmakers' intent" (*Osuna, supra,* 225 Cal.App.4th at p. 1033), nor will the " 'apparent purpose of a statute . . . be sacrificed to a literal construction.' " (*Cossack v. City of Los Angeles* (1974) 11 Cal.3d 726, 733.) Rather, we must construe the statute in accord with its purpose, and a court should not construe the language of a statute in its literal sense if

---

5       We note the California Supreme Court has recently granted review to determine whether the definition of "unreasonable risk of danger to public safety" under Proposition 47 applies to resentencing under the TSRA. (*People v. Valencia* (2014) 232 Cal.App.4th 514, review granted Jan. 16, 2015, S223825.) Pending direction from the Supreme Court, we must reach the issue here.

doing so "would result in absurd consequences that the [voters] did not intend" (*In re Michele D.* (2002) 29 Cal.4th 600, 606), or would "frustrate[] the manifest purposes of the legislation as a whole . . . ." (*People v. Williams* (1992) 10 Cal.App.4th 1389, 1393.) "To this extent, therefore, intent prevails over the letter of the law and the letter will be read in accordance with the spirit of the enactment." (*Michele D.,* at p. 606.)

We therefore consult " 'a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]' [Citation.] We also ' "refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." [Citation.]' " (*Osuna, supra,* 225 Cal.App.4th at p. 1034.) With these extrinsic aids, we " ' "select the construction that comports most closely with the apparent intent of the [electorate], with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' " (*Id.* at pp. 1034-1035.)

Although the TSRA and Proposition 47 address related subjects, they target such different subjects that we conclude Proposition 47's literal meaning would not comport with the purpose of the TSRA, and applying it to resentencing proceedings under the TSRA would frustrate, rather than promote, that purpose and the intent of the electorate in enacting both initiative measures. First, as is evidenced by its title, the TSRA was aimed solely at revising a law—the three strikes law—the principal focus of which was to punish recidivism with more severe sentences. (See, e.g., *People v. Cooper* (1996) 43

11

Cal.App.4th 815, 823-824.) Just a few months before the November 6, 2012, election at which the TSRA was passed, the California Supreme Court recognized that "[o]ne aspect of the [three strikes] law that has proven controversial is that the lengthy punishment prescribed by the law may be imposed not only when . . . a defendant [who has previously been convicted of one or more serious or violent felonies] is convicted of another serious or violent felony but also when he or she is convicted of any offense that is categorized under California law as a felony. This is so even when the current, so-called triggering, offense is nonviolent and may be widely perceived as relatively minor." (*In re Coley* (2012) 55 Cal.4th 524, 528-529.)

When voters approved the TSRA, they resolved this controversy in favor of strike offenders. In one of the "Findings and Declarations" of the TSRA, the voters approved the declaration that the TSRA would "[r]estore the Three Strikes law to the public's original understanding by requiring life sentences only when a defendant's current conviction is for a violent or serious crime." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) text of Prop. 36, § 1, p. 105, at <http://vig.cdn.sos.ca.gov/2012/general/pdf/complete-vig-v2.pdf> [as of Feb. 25, 2015].) Nowhere, however, do the ballot materials for the TSRA suggest voters understood or intended the TSRA would require resentencing of qualified third strike offenders in all but the most egregious cases, as would be the result if the definition of " 'unreasonable risk of danger to public safety' " contained in section 1170.18, subdivision (c), were engrafted onto resentencing proceedings under the TSRA. That voters did *not* intend such a result is amply demonstrated by the fact an indeterminate life term remained

mandatory under the TSRA for a wide range of current offenses even if the offender does not have a prior conviction for a particularly heinous offense (§§ 667, subd. (e)(2), 1170.12, subd. (c)(2)), and an inmate is rendered ineligible for resentencing under section 1170.126 for an array of reasons beyond his or her having suffered such a prior conviction (see § 1170.126, subd. (e)(2)).

When voters adopted the reforms of the TSRA, that enactment was still presented as placing public safety first, even though there were also cost savings likely to accrue as a result of its enactment. Thus, uncodified section 7 of the Act provides: "This act is an exercise of the public power of the people of the State of California *for the protection of the health, safety, and welfare of the people of the State of California,* and shall be liberally construed to effectuate those purposes." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012), *supra,* text of Prop. 36, p. 110, original italics omitted, italics added.) As explained in *People v. Osuna, supra,* 225 Cal.App.4th at p. 1036, "[a]lthough the [TSRA] 'diluted' the three strikes law somewhat [citation], '[e]nhancing public safety was a key purpose of the Act' [citation]."

In contrast, Proposition 47 emphasized monetary savings. The "Findings and Declarations" state: "The people of the State of California find and declare as follows: [¶] The people enact the Safe Neighborhoods and Schools Act to ensure that prison spending is focused on violent and serious offenses, to maximize alternatives for nonserious, nonviolent crime, and to invest the savings generated from this act into prevention and support programs in K-12 schools, victim services, and mental health and drug treatment. This act ensures that sentences for people convicted of dangerous crimes like rape,

13

murder, and child molestation are not changed." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 2, p. 70, at <http://vig.cdn.sos.ca.gov/2014/general/en/pdf/complete-vigr1.pdf> [as of Feb. 25, 2015].) Proposition 47 requires misdemeanor sentences for various drug possession and property offenses, unless the perpetrator has a prior conviction for a particularly heinous offense or for an offense requiring sex offender registration pursuant to section 290, subdivision (c). (Health & Saf. Code §§ 11350, subd. (a), 11357, subd. (a), 11377, subd. (a); §§ 459.5, subd. (a), 473, subd. (b), 476a, subd. (b), 490.2, subd. (a), 496, subd. (a), 666, subd. (b).) Section 1170.18 renders ineligible for resentencing only an inmate whose current offense would now be a misdemeanor, but who has a prior conviction for a particularly heinous offense or for an offense requiring sex offender registration pursuant to section 290, subdivision (c). (§ 1170.18, subds. (a), (i).)

Nowhere in the ballot materials for Proposition 47 were voters given any indication that initiative, which dealt with offenders whose current convictions would now be *misdemeanors* rather than felonies, had any impact on the TSRA, which dealt with offenders whose current convictions *would still be felonies*. For instance, the Official Title and Summary stated, in pertinent part, that Proposition 47 would "[r]equire[] resentencing for persons serving felony sentences for these offenses[, i.e., offenses that require misdemeanor sentences under the measure] unless court finds unreasonable public safety risk." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra,* official title and summary of Prop. 47, p. 34.) In explaining what Proposition 47 would do, the Legislative Analyst stated: "This measure reduces penalties for certain

14

offenders convicted of *nonserious and nonviolent property and drug crimes.* This measure also allows certain offenders *who have been previously convicted of such crimes* to apply for reduced sentences." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra,* analysis of Prop. 47 by Legis. Analyst, p. 35, italics added.) With respect to the resentencing provision, the Legislative Analyst explained:

> "This measure allows offenders *currently serving felony sentences for the above crimes* [, i.e., grand theft, shoplifting, receiving stolen property, writing bad checks, check forgery, and drug possession] to apply to have their felony sentences reduced to misdemeanor sentences. In addition, certain offenders who have already completed a sentence for a felony that the measure changes could apply to the court to have their felony conviction changed to a misdemeanor. However, no offender who has committed a specified severe crime could be resentenced or have their conviction changed. In addition, the measure states that a court is not required to resentence an offender currently serving a felony sentence if the court finds it likely that the offender will commit a specified severe crime. Offenders who are resentenced would be required to be on state parole for one year, unless the judge chooses to remove that requirement." (*Id.* at p. 36, italics added.)

Similarly, the arguments in favor of and against Proposition 47 spoke in terms solely of Proposition 47, and never mentioned the TSRA. The argument in favor of Proposition 47 spoke in terms of prioritizing serious and violent crime so as to stop wasting prison space "on petty crimes," stop "wasting money on warehousing people in prisons for nonviolent petty crimes," and stop California's overcrowded prisons from "incarcerating too many people convicted of low-level, nonviolent offenses." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra,* argument in favor of Prop. 47, p. 38.) The rebuttal to argument against Proposition 47 reiterated these themes, and never suggested Proposition 47 would have any effect on resentencing under the TSRA.

15

(See Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra,* rebuttal to argument against Prop. 47, p. 39.) Although the rebuttal to argument in favor of Proposition 47 asserted 10,000 inmates would be eligible for early release under the measure, and that many of them had *prior* convictions "for serious crimes, such as assault, robbery and home burglary" (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra,* rebuttal to argument in favor of Prop. 47, p. 38), there is no suggestion the early release provisions would extend to inmates whose current offenses remained felonies under the TSRA. The same is true of the discussion of resentencing contained in the argument against Proposition 47. (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra,* argument against Prop. 47, p. 39.)

In light of the foregoing, we cannot reasonably conclude voters intended the definition of " 'unreasonable risk of danger to public safety' " contained in section 1170.18, subdivision (c), to apply to that phrase as it appears in section 1170.126, subdivision (f), despite the former section's preamble, "As used throughout this Code . . . ." Voters cannot intend something of which they are unaware.

Additionally, as a matter of statutory construction, we note the TSRA's sunset clause effectively precluded most new applications for relief under the TSRA after November 7, 2014 (see § 1170.126, subd. (b)), while Proposition 47 (and its newly enacted definitional provisions under § 1170.18, subd. (c)) took effect on November 5, 2014 (Cal. Const., art. II, § 10, , subd. (a)), which would provide only a two-day window during which an applicant under the TSRA would reap the benefits of the more restrictive "dangerousness" definitions adopted by Proposition 47. As an additional matter of

16

statutory construction, we decline to ascribe to the electorate an intent to overlay a definitional amendment onto a remedial scheme that effectively expired two days after the definitional amendment would have taken effect.

Finally, and again as a matter of statutory construction, adopting Ingram's interpretation of the intended scope of section 1170.18, subdivision (c), would present serious questions under the equal protection clauses of the United States and California Constitutions. Specifically, under Ingram's construction, the more restrictive "dangerousness" definition adopted by Proposition 47 would apply only to applicants who invoked the TSRA during the two-day window when both were in effect or (assuming retroactivity)[6] to a slightly larger class of applicants under the TSRA whose matters were not yet final before the effective date of Proposition 47. However, the more restrictive "dangerousness" definition adopted by Proposition 47 would provide no benefit to those applicants who, although identically situated to Ingram, had their TSRA applications denied and which denials became final before November 5, 2014. "Both the United States Supreme Court and the California courts have pointed out on numerous occasions that a court, when faced with an ambiguous statute that raises serious constitutional questions, should endeavor to construe the statute in a manner which *avoids* any doubt concerning its validity." (*Carlos v. Superior Court* (1983) 35 Cal.3d 131, 147, fn. omitted, overruled on other grounds in *People v. Anderson* (1987) 43 Cal.3d

---

6    However, the court in *People v. Chaney* (2014) 231 Cal.App.4th 1391 concluded, even if Proposition 47's definition of an "unreasonable risk to public safety" applied prospectively to applications under the TSRA, it did not apply retrospectively to applications denied before the effective date of Proposition 47.

1104, 1147.) Our construction of Proposition 47's provisions avoids potential equal protection infirmities of its provisions by limiting its application to applicants under Proposition 47's remedial scheme.

C. The Substantial Evidence Claim

Ingram argues there was no substantial evidence from which a court reasonably could conclude that he posed an unreasonable risk of the type of recidivism that would endanger the public safety.

Section 1170.126, subdivision (f), provides that a petitioner shall not be resentenced if "the court, *in its discretion,* determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (Italics added.) By its plain language, subdivision (f) of section 1170.126 leaves the determination of whether resentencing would present an unreasonable risk of danger to public safety to the *discretion* of the court. This conclusion finds further support in subdivision (g) of this same statute, which provides in part that a court may consider various enumerated factors "[i]n exercising its *discretion* in subdivision (f)." (Italics added.)

The language of the statutory scheme has led at least one court to construe the appropriate standard of review to involve two distinct but interdependent steps. In *People v. Payne* (2014) 232 Cal.App.4th 579, the court concluded the first step requires the People to carry the burden of proving, by a preponderance of the evidence, the *facts* on which a finding that resentencing a petitioner would pose an unreasonable risk of danger to public safety reasonably can be based, and that appellate review of those facts is based on the substantial evidence standard. However, *Payne* concluded the

18

preponderance of the evidence standard does *not* apply to the trial court's determination regarding dangerousness but, instead, the ultimate decision of whether resentencing an inmate would pose an unreasonable risk of danger to public safety instead is within the sound discretion of the trial court, and therefore its finding must be upheld if it does not constitute an abuse of discretion, i.e., if it falls within the bounds of reason, all of the circumstances being considered. (*Payne,* at p. 597.)

We agree this construction comports with the statutory language of section 1170.126, subdivision (f), that a petitioner shall not be resentenced if "the court, *in its discretion,* determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (Italics added.) Applying those tests here, there was substantial evidence of numerous facts the court was entitled to consider when making its discretionary determination.[7] Ingram had a lengthy prior record of offenses, including a 1979 robbery in which he personally used a handgun and caused great bodily injury, and other offenses in which physical violence was at least nascent, such as his 1986 conviction for robbery, and two earlier convictions in which he was carrying a concealed weapon. Moreover, his prior record demonstrated a marked inability to remain law-abiding during the brief periods when he was free from incarceration. Finally, his prison

---

7       When exercising its discretion, "the court may consider: [¶] (1) The [inmate's] criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The [inmate's] disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g).)

behavior included numerous violations, including violations in which he used assaultive or aggressive behavior, the last of which was only four years before he filed the present petition.

The court, after carefully considering the somewhat favorable evaluation of Ingram by Dr. Clipson, exercised its discretion under the TSRA not to grant Ingram's petition, reasoning that Ingram did present:

> "a substantial and high risk to recidivate in some criminal fashion, and given the difficulties that he has had even in the institution, it appears that he is very much at risk. Although the doctor characterizes a low/moderate risk of violent recurrence, he is at risk to commit a violent offense. [¶] I think given the instability that I see in his performance in the state prison, given his record in the state prison, I find that release at this time and resentencing this petitioner would pose an unreasonable risk of danger to public safety."

We cannot conclude, on these facts, that the discretionary decision to deny Ingram's petition fell outside the bounds of reason, all of the circumstances being considered. Ingram contends, however, that the trial court erroneously framed the pertinent issue as an inquiry into the risk of recidivism in general rather than the likelihood of future violence. However, Ingram's prior crimes (including three that involved carrying a handgun) and his aggressive and assaultive behavior in prison provide an evidentiary basis to conclude he was at risk of committing a violent offense. More importantly, section 1170.126, subdivision (f), does not provide a petitioner shall be resentenced unless the court determines resentencing the petitioner would pose an unreasonable risk of *violence*. Instead, that section employs the terminology of "danger to public safety," and the commission of crimes can constitute a danger to public safety

20

without being offenses of violence. (See, e.g., *People v. Hughes* (2002) 27 Cal.4th 287, 355 [crime of burglary is " ' " 'based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence' " ' "].) To condition resentencing denials on the likelihood of future violence would run contrary to the language of section 1170.126, subdivision (f), and we will not superimpose a requirement of a likelihood of violence where none was included by the electorate. (Accord, *People v. Payne, supra,* 232 Cal.App.4th at pp. 603-604.)

## DISPOSITION

The order is affirmed.


McDONALD, J.

WE CONCUR:


NARES, Acting P. J.


McINTYRE, J.

21